# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 370 | DATE | 11/15/2001 |
| CASE TITLE | KATHY QUINTANAR vs. FIRST NATIONWIDE BANK | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. Enter Memorandum Opinion And Order. Defendant California Federal Bank's motion for summary judgment [16-1] is granted.. The case is closed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | NOV 16 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 37 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | LG courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION.

PHILIP MARTINO, Trustee in
Bankruptcy, f/u/o
KATHY QUINTANAR, Bankrupt

Plaintiff,

v.

CALIFORNIA FEDERAL BANK, FSB.,
as Successor to
FIRST NATIONWIDE BANK, N.A.,

Defendant.

Case No. 00 C 0370

The Honorable John W. Darrah

## MEMORANDUM OPINION AND ORDER

Plaintiff Kathy Quintanar[1] ("Plaintiff" or "Quintanar") has filed a one-count complaint against Defendant California Federal Bank ("CalFed" or "Defendant"), alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended. Defendant has moved for summary judgment pursuant to FED.R.CIV.P. 56. For the reasons that follow, Defendant CalFed's Motion for Summary Judgment [16-1] is GRANTED.

---

[1] Philip Martino ("Trustee") is a Trustee in Bankruptcy and appointed to function as a Trustee in Bankruptcy for the Bankruptcy Petition filed on behalf of Kenneth and Kathy Quintanar known as 97 B 31002. This cause of action was originally filed by Quintanar. After filing, Quintanar's Bankruptcy Petition was re-opened, and this cause of action was listed in the Bankruptcy Petition as an asset of the Bankruptcy Estate. Thus, it became an asset of the Bankruptcy Estate under the control and/or possession of the Trustee by operation of law, and the Trustee is the proper plaintiff. However, for simplicity, Quintanar will continue to be referred to as the plaintiff in this opinion.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Patel v. Allstate Insurance Co.*, 105 F.3d 365, 367 (7th Cir. 1997). The movant bears the initial burden of establishing that the record presents no genuine issue of material fact. *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997). Then the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).

The non-movant cannot succeed in creating a factual dispute solely by resting on allegations in the pleadings but must produce evidence showing there is a disputed issue for trial. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). In order to withstand summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only genuine disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

## FACTS

Considering the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and drawing all reasonable inferences from the evidence in Plaintiff's favor, the facts, for purposes of resolving this Motion for Summary Judgment, are as follows.

Plaintiff Kathy Quintanar was hired by Defendant CalFed in February 1990. (Def.'s 56.1 ¶

5). Throughout her employment with CalFed, Plaintiff worked at CalFed's Oak Brook, Illinois facility. (Def.'s 56.1 ¶ 5). During her employment, Quintanar held the positions of "Office Assistant II," "Office Assistant III," and "Consumer Lending Processor II". (Def.'s 56.1 ¶ 5). While Plaintiff worked in the consumer lending department, there were two positions for flood insurance processors. (Pl.'s 56.1 ¶ 6).

On March 21, 1994, because of her pregnancy, Quintanar submitted a "Leave of Absence Notification" with the dates of her intended absence left blank and to be filled in at a later time. (Pl.'s 56.1 ¶ 8). Shortly after Quintanar submitted her "Leave of Absence Notification," Ron Meyer, Plaintiff's former supervisor, told Quintanar, "The only people I know that have babies like that are Mexicans and Niggers." (Pl.'s 56.1 ¶ 9).

Quintanar began a leave of absence on July 15, 1994. (Def.'s 56.1 ¶ 6). Quintanar had been told by her doctor that she would need to take her leave of absence beginning July 15, 1994, due to complications with her pregnancy. (Pl.'s 56.1 ¶ 10). At the time Quintanar commenced her leave, she estimated that she would be able to return to work six months later, in January 1995. (Def.'s 56.1 ¶ 6). Before leaving, Quintanar met with her immediate supervisor, Marcia Peterson, to discuss the terms of her leave. (Def.'s 56.1 ¶ 8). During this meeting, Peterson suggested that it might be better for Quintanar to stay at home and take care of her babies rather than come back to work. (Pl.'s 56.1 ¶ 13).

Quintanar had earlier received a copy of Defendant's 1994-1995 Employee Handbook, which described the terms of the leave she was seeking. (Def.'s 56.1 ¶ 7). The Handbook clearly stated that Quintanar's position would only be reserved for her if she sought to return to work by or before the expiration of the twelve weeks. (Def.'s 56.1 ¶ 9). Defendant's employee leave policy does not

guarantee to employees beyond the first twelve weeks of an absence. Rather, employees who seek to return after the twelve weeks have expired may apply for any open positions in the event their positions have been filled. (Def.'s 56.1 ¶ 9). Before leaving, Quintanar also had a copy of Defendant's Leave of Absence Information and Notification Form, which stated, in relevant part:

> Reinstatement following an extended leave depends on openings that are available at the time of your return and is not guaranteed. If your position is open, you will generally return to that position. . . .If no position is available, employment will be terminated as an involuntary termination.

(Def.'s 56.1 ¶ 10).

While she worked at Defendant, Quintanar and another employee, Lisa White, shared the responsibilities for monitoring flood insurance. (Def.'s 56.1 ¶ 11). After Quintanar went on leave, a temporary employee, Crystal Johnson, was hired to assist Lisa White with monitoring flood insurance. (Def.'s 56.1 ¶ 11). Lisa White resigned on September 2, 1994. (Def.'s 56.1 ¶ 12). Following White's resignation, Johnson was assigned additional duties previously held by Quintanar. (Def.'s 56.1 ¶ 12). Another individual, Carol Ferry, filled White's position on October 1, 1994. (Def.'s Resp. to Pl.'s 56.1 ¶ 23).

During the first week of October 1994, Marcia Peterson and Defendant's human resources consultant, Jana Borgesi, conducted a conference call with Plaintiff. (Def.'s 56.1 ¶ 13). They informed Quintanar that October 7, 1994 marked the end of the twelve-week period and reminded Quintanar that the position of Consumer Lending Processor II would only be guaranteed to her if she returned to work by or before the expiration of twelve weeks of absence. (Def.'s 56.1 ¶ 13). Quintanar informed them that she was unable to return to work and did not expect to be released to return to work until December 20, 1994. (Def.'s 56.1 ¶ 13). Borgesi and Peterson then informed

her that the Consumer Lending Processor position would have to be filled with a permanent employee. (Def.'s 56.1 ¶ 13). They further informed Quintanar that when her doctor released her to work, she would be free to apply for any open positions within the company and that, if there were no suitable positions available, she would be terminated. (Def.'s 56.1 ¶ 13). Following the call, Borgesi sent Quintanar a memorandum summarizing the conversation. (Def.'s 56.1 ¶ 14). On October 10, 1994, Defendant hired Crystal Johnson on a permanent basis. (Def.'s 56.1 ¶ 14).

On December 20, 1994, Quintanar called Borgesi and informed her that she was able to return to work and that she wanted the position of Consumer Lending Processor II returned to her. (Def.'s 56.1 ¶ 16). Borgesi informed her that her position had been filled and invited Quintanar to apply for any open positions. (Def.'s 56.1 ¶ 16). Quintanar informed Borgesi that there were no other open positions and wanted her former position back. (Def.'s 56.1 ¶ 17).

Quintanar's employment was terminated on December 21, 1994. (Def.'s 56.1 ¶ 2). Marcia Peterson assisted Borgesi in "effectuating" the decision to terminate Plaintiff. (Pl.'s 56.1 ¶ 20). Quintanar filed a Charge of Discrimination with the Illinois Department of Human Rights and Equal Employment Opportunity Commission in February 1995. (Def.'s 56.1 ¶ 4).

## DISCUSSION

Plaintiff Kathy Quintanar alleges that she was terminated because of her pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended.

Quintanar may proceed on her claim of sex discrimination in one of two ways. She may present evidence that her termination resulted from intentional discrimination, or she may proceed under the burden-shifting approach set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973). *Geier v. Medtronic, Inc.*, 99 F.3d 238, 240 (7th Cir. 1996).

Defendant CalFed argues that Plaintiff has failed to show a disputed issue of material fact which would preclude summary judgment under either approach.

*Evidence of Intentional Discrimination*

Plaintiff "may demonstrate discriminatory animus through direct evidence, e.g., an acknowledgment on the part of the employer of discriminatory intent, or – as is more usually the case – by relying on circumstantial evidence, e.g., ambiguous statements or suspicious timing. *Geier*, 99 F.3d at 240 (citing *Troupe v. May Department Stores Co.*, 20 F.3d 734 (7th Cir. 1994)).

Quintanar argues that comments made by Ron Meyer and Marcia Peterson constitute direct evidence of discrimination. Shortly after Quintanar submitted her "Leave of Absence Notification," Ron Meyer, Plaintiff's former supervisor, told Quintanar, "The only people I know that have babies like that are Mexicans and Niggers." (Pl.'s 56.1 ¶ 9). Before Quintanar began her leave, Peterson suggested that it might be better for Quintanar to stay at home and take care of her babies rather than come back to work. (Pl.'s 56.1 ¶ 13).

"To be probative of discrimination, isolated comments must be contemporaneous with the discharge or causally related to the discharge decision making process." *Geier*, 99 F.3d at 242 (citations omitted). To call Ron Meyer's statement insensitive would be a gross understatement. However, while Meyer's comment is extremely offensive, it is not probative of discrimination. Plaintiff has not shown that Meyer was involved in the decision to terminate her employment. Also, the comment was made months before her employment was terminated, and Plaintiff has shown no causal link between the comment and the decision to discharge. Marcia Peterson's comment is likewise not probative of discrimination. The statement was made some three months before Plaintiff's termination. Once again, there is no causal nexus between the remark and the decision

to discharge. This comment was made during a discussion in which Plaintiff stated that she would need more than the three months of leave provided in Defendant's leave plan. At that time, Peterson notified her of Defendant's policy regarding leaves over three months. Peterson further informed her that if she took more than three months, she would be free to apply for other jobs when she returned.

Plaintiff also contends her position was never filled, and this alleged fact constitutes evidence of discrimination. However, the facts clearly establish that the two positions at issue were filled by Carol Ferry and Crystal Johnson during the first week of October 1994. (Def.'s 56.1 ¶ 11, Def.'s Resp. to Pl.'s 56.1 ¶ 23).

Furthermore, Quintanar makes no showing that her termination resulted from her pregnancy rather than her absence from work. Federal law does not require employers to make accommodations for their pregnant employees; "[e]mployers can treat pregnant women as badly as they treat similarly affected but nonpregnant employees." *Troupe*, 20 F.3d at 738. Federal law "requires the employer to ignore an employee's pregnancy, but . . . not her absence from work, unless the employer overlooks the comparable absences of nonpregnant employees . . . ." *Geier*, 99 F.3d at 241. Without a demonstration that Peterson or Defendant treated non-pregnant employees on leave longer than three months better than Quintanar, discriminatory intent cannot be read into these statements. Consequently, there is no genuine issue as to any material fact which could directly prove gender discrimination.

*McDonnell-Douglas Approach*

To prove a *prima facie* case of employment discrimination under the *McDonnell Douglas* approach, Quintanar must establish that: (1) she is a member of a protected class; (2) she suffered

an adverse employment action; (3) she was meeting her employer's legitimate performance expectations; and (4) her employer treated similarly situated employees who were not in the protected class more favorably. *Maarouf v. Walker Manufacturing Co.*, 210 F.3d 750, 751 (7th Cir. 2000). Under the *McDonnell Douglas* framework, a *prima facie* case of employment discrimination creates a rebuttable presumption that employer's actions, if unexplained, were the result of impermissible factors and shifts the burden of production to the employer to articulate some legitimate, nondiscriminatory reason for its actions; if the employer satisfies that burden, Plaintiff must then show that these articulated reasons were pretextual. *Hong v. Children's Memorial Hospital*, 993 F.2d 1257, 1261 (7th Cir. 1994). A plaintiff can establish pretext by showing that the employer's explanation is unworthy of credence or that a discriminatory reason more likely motivated the employer. *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir. 1998). "[Pretext ... means a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). "If an employee making hiring decisions honestly believes that the decisions are based on nondiscriminatory reasons, the reasons are not pretextual." *Bickerstaff v. Nordstrom*, 48 F.Supp. 790, 799 (7th Cir. 1999).

Plaintiff Quintanar has failed to show that she was meeting the legitimate expectations of her employer. Her inability to return to work after three months' leave constituted a clear violation of her employer's leave policy.

Likewise, Plaintiff has failed to show that similarly situated non-pregnant employees received better treatment. She has not shown that other employees who were not pregnant were allowed to take leaves longer than twelve weeks and retain their positions.

Finally, Plaintiff has failed to show that Defendant's stated reason is a pretext for gender

discrimination. Although Plaintiff contends that the fact that her position was not filled shows that her employer's stated reason is pretextual, the fact that two additional employees were hired for the department undercuts her argument.

## CONCLUSION

For the reasons stated herein, Defendant CalFed's Motion for Summary Judgment [16-1] is GRANTED.

The case is closed.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: 11/1/01